1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   TINA MARIE RIGGAN,

9                              Plaintiff,                  CASE NO. C14-1483-RSL-MAT

10               v.

11  CAROLYN W. COLVIN, Acting                  REPORT AND RECOMMENDATION
    Commissioner of Social Security,          RE: SOCIAL SECURITY DISABILITY
                                              APPEAL
12                             Defendant.

13

14          Plaintiff Tina Marie Riggan proceeds through counsel in her appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16  denied applications for Disability Insurance Benefits (DIB) and Supplemental Security Income

17  (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's

18  decision, the administrative record (AR), and all memoranda of record, the Court recommends

19  this matter be REMANDED for further administrative proceedings.

20                          **FACTS AND PROCEDURAL HISTORY**

21          Plaintiff was born on XXXX, 1979.[1]  She graduated high school, completed some

22

23          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Fed. R. Civ. P.
    5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 1

1  college, and previously worked as a laundry worker, sales clerk, fast-food worker, and telephone

2  answering service operator.  (AR 40, 57.)

3       Plaintiff filed DIB and SSI applications in 2011, alleging disability beginning March 17,

4  2008.  (AR 241-50.)   Her applications were denied at the initial level and on reconsideration.

5       On December 19, 2012, ALJ Verrell Dethloff held a hearing, taking testimony from

6  plaintiff.  (AR 54-82.)  On March 6, 2013, the ALJ issued a decision finding plaintiff not

7  disabled.  (AR 26-46.)

8       Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on

9  July 22, 2014 (AR 2-5), making the ALJ's decision the final decision of the Commissioner.

10  Plaintiff appealed this final decision of the Commissioner to this Court.

11  **JURISDICTION**

12       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13  **DISCUSSION**

14       The Commissioner follows a five-step sequential evaluation process for determining

15  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

16  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

17  engaged in substantial gainful activity since the alleged onset date.  At step two, it must be

18  determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

19  degenerative disc disease, fibromyalgia, affective disorder, and anxiety disorder severe.  Step

20  three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found

21  plaintiff's impairments did not meet or equal the criteria of a listed impairment.

22       If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

23  residual functional capacity (RFC) and determine at step four whether the claimant has

REPORT AND RECOMMENDATION
PAGE - 2

demonstrated an inability to perform past relevant work.  The ALJ found plaintiff could perform a not significantly reduced range of unskilled light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  She could occasionally climb ramps and stairs, as well as ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to extreme cold, vibration, and hazards, such as dangerous machinery and unprotected heights.  She can perform simple repetitive work in a non-collaborative environment and cannot have contact with the public.  With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With consideration of the Medical-Vocational Guidelines, the ALJ found plaintiff capable of performing jobs existing in significant numbers in the national economy.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering medical opinions, in failing to find her personality disorder severe at step two, in assessing her RFC, and in failing to secure the

REPORT AND RECOMMENDATION
PAGE - 3

1    testimony of a vocational expert for step five.  She requests remand for an award of benefits or,

2    in the alternative, for further administrative proceedings.  The Commissioner argues the ALJ's

3    decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

4

5        In evaluating the weight to be given to the opinions of medical providers, Social Security

6    regulations distinguish between "acceptable medical sources" and "other sources."  Acceptable

7    medical sources include, for example, licensed physicians and psychologists, while other non-

8    specified medical providers, like nurse practitioners, are considered "other sources."  20 C.F.R.

9    §§ 404.1513(a) and (d), 416.913(a) and (d), and Social Security Ruling (SSR) 06-03p.

10        In general, more weight should be given to the opinion of a treating physician than to a

11    non-treating physician, and more weight to the opinion of an examining physician than to a non-

12    examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where contradicted by

13    another physician, a treating or examining physician's opinion may not be rejected without

14    "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

15    *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

16        Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74 F.3d

17    967, 970 (9th Cir. 1996).  However, the ALJ's decision should reflect consideration of such

18    opinions, SSR 06-3p, and the ALJ may discount the evidence by providing reasons germane to

19    each source.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted).

20        Plaintiff her argues the ALJ failed to provide adequate reasons for rejecting the opinions

21    of long-term treating providers at the Fremont Community Therapy Project (FCTP).

22    A.    <u>Dr. Laura Brown and Cindy Chen, M.A.</u>

23        Dr. Laura Brown completed evaluations of plaintiff for the Department of Social and

REPORT AND RECOMMENDATION
PAGE - 4

Health Services (DSHS) in August 2011 and July 2012, assessing a number of marked limitations in cognitive and social functioning and, in the latter evaluation, a severe limitation in the ability to maintain appropriate behavior in a work setting.  (AR 968-75, 1291-94.)  Dr. Brown also supervised plaintiff's therapists at FCTP (AR 1026), and co-signed evaluations counselor Cindy Chen, M.A., completed in May and September 2009 and which assessed a number of marked and severe limitations in cognitive and social functioning (AR 1260-69).  In an October 2009 letter, Chen reiterated the limitations assessed, and stated:  "In short, her current impairment prevents her from performing work-related activities on a sustained basis.  She is disabled from substantial gainful employment at this time."  (AR 859.)

The ALJ gave no weight to Chen's October 2009 "lay opinion", finding it relied heavily on plaintiff's own statements, which the ALJ found unreliable.  (AR 39.)  The ALJ also found the opinion not supported by plaintiff's performance on mental status examinations (MSE) and her behavior at appointments or evaluations.  He gave little weight to the opinions of Dr. Brown, finding them not supported by MSE findings, not consistent with the record as a whole, and relying "quite heavily on the claimant's own unreliable statements."  (AR 39-40.)

Plaintiff denies the alleged reliance on her subjective reporting, pointing to MSE findings and firsthand observations by Dr. Brown and Chen and arguing the absence of any suggestion these providers relied more heavily on her description of her symptoms than on their own findings and observations.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of  the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."; noting nothing in record to suggest physician disbelieved claimant's description

REPORT AND RECOMMENDATION
PAGE - 5

1    of symptoms or relied on those descriptions more than his own clinical observations). She

2    maintains the record reflects consistency in the opinions of her various medical providers over

3    five years of treatment, and states that the ALJ failed to cite specific evidence or explain how her

4    providers' opinions were not consistent with the record as a whole.

5         An ALJ may reject the opinion of a treating or examining physician if "based 'to a large

6    extent' on a claimant's self-reports that have been properly discounted as incredible."

7    *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec.*

8    *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). On the other hand, "when an opinion is not more

9    heavily based on a patient's self-reports than on clinical observations, there is no evidentiary

10   basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ

11   "offered no basis" for conclusion medical opinions were based more heavily on self-reports,

12   where letter and evaluation discussed treating providers' "observations, diagnoses, and

13   prescriptions, in addition to . . . self-reports."). *See also Ryan*, 528 F.3d at 1199-1200. An ALJ

14   may also properly reject a physician's opinions based on inconsistencies between the opinions

15   and the medical record, *Tommasetti*, 533 F.3d at 1041, as well as on internal inconsistencies

16   within and between physicians' reports, *Morgan*, 169 F.3d at 603. Moreover, the ALJ is

17   responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r of SSA*, 533 F.3d

18   1155, 1164 (9th Cir. 2008), and when evidence reasonably supports either confirming or

19   reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ,

20   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

21        In this case, there is some support for the ALJ's interpretation of the opinion evidence

22   from Chen and Dr. Brown as reflecting partial reliance on plaintiff's subjective reporting and as

23   inconsistent internally and with other aspects of the record. The Court, however, finds the

REPORT AND RECOMMENDATION
PAGE - 6

substantial evidence support for the ALJ's conclusions undercut in a number of respects.

As an initial matter, the ALJ did not acknowledge either that Chen completed two separate evaluations of plaintiff or that Dr. Brown co-signed both of those evaluations.  The mere inclusion of Dr. Brown's signature does not transform Chen into an acceptable medical source and entitle her opinions to greater weight.  *See Bain v. Astrue*, No. 07-35635, 2009 U.S. App. LEXIS 5203 at *6-7 (9th Cir. Mar. 12, 2009) ("Although Stout consults with a psychiatrist every two weeks and participates in a peer supervision group with a psychologist, this is not the type of physician supervision that our case law requires in order to consider a nurse practitioner an acceptable medical source.") (citing *Gomez*, 74 F.3d at 971 (holding that a nurse practitioner's opinion constituted an acceptable medical source where the nurse "worked closely under the supervision" of the doctor such that the nurse was "acting as an agent" of the doctor)).  However, the ALJ's failure to even acknowledge Chen's earlier evaluation or the inclusion of Dr. Brown's signatures raises questions as to his understanding and consideration of the record as a whole, including Dr. Brown's role in plaintiff's treatment.  *Cf. Benton v. Barnhart*, 331 F.3d 1030, 1035-40 (9th Cir. 2003) (explaining how a physician may be a treating physician in working as a part of a treatment team; finding physician who "had examined [the claimant] not much more than a year before his report, and was still employed to cure her[,]" and who served as a part of a treatment team, fell into the treating physician category).

In addition, a review of the evaluations of these providers and of the record as a whole detracts from the ALJ's finding of heavy reliance on plaintiff's subjective reporting and on internal and other inconsistencies.  The ALJ, for example, described only Dr. Brown's 2011 evaluation and omitted any description or discussion of the 2012 evaluation, the latter of which included observations of tangential speech and thought, unclear narratives, guarded, often

REPORT AND RECOMMENDATION
PAGE - 7

1    tearful, or hostile attitude and behavior, labile, severely depressed, and hopeless mood, variable

2    affect, and other deficiencies in orientation, perception, memory, concentration, abstract thought,

3    and insight and judgment.  (AR 1294.)

4           The Commissioner argues Dr. Brown's 2012 evaluation "must be put in the context of

5    the rest of the medical evidence, which the ALJ discussed[,]" noting it occurred only six days

6    after plaintiff was "involuntarily hospitalized for suicidal ideation immediately after seeing a

7    treatment provider who refused to prescribe 'stronger pain medicine'" and that plaintiff "had to

8    be forcibly 'strapped down[.]'" (Dkt. 13 at 6 (quoting AR 1305-06).)  She also points to an MSE

9    conducted by a different provider on the day following Dr. Brown's evaluation as showing

10   plaintiff "was much less impaired than she was the day before, . . . with a depressed mood and a

11   constricted affect," but with adequate attention and intact memory.  (*Id.* (citing AR 1300).)

12   However, the ALJ did not point to any of this evidence in rejecting the 2012 opinions of Dr.

13   Brown.  *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's

14   decision "based on the reasoning and factual findings offered by the ALJ – not post hoc

15   rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citing,

16   *inter alia*, *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

17          Nor was the ALJ's discussion of this evidence otherwise adequate.  The ALJ had earlier

18   noted that "[i]n July 2012, she was unhappy when her treating provider would not prescribe

19   additional narcotics[.]"  (AR 37 (citing AR 1305.)  He did not mention plaintiff's expression of

20   suicidal ideation and her related involuntary psychiatric hospitalization.  (*See* AR 35-37.)  The

21   ALJ did not discuss the treatment note and MSE on the day following Dr. Brown's evaluation.

22   The note included plaintiff's report that she did not feel her hospitalization the week prior had

23   helped, that she felt "'50/50' . . . in terms of safety[,]" reported "feelings of anger towards others

REPORT AND RECOMMENDATION
PAGE - 8

and fear of 'flying off the handle[,]'" and expressed suicidal and homicidal ideation.  (AR 1299.)

In addition, other MSE results from that day included excessive speech, cooperative and hopeless attitude, abasing self-perception, and tangential thought processes.  (AR 1300.)

Some of this evidence may well have been reasonably considered as a part of a "pattern of possible exaggeration of symptoms in order to obtain narcotic pain medications."  (AR 37.) However, the failure to adequately address the evidence calls into question the ALJ's statement that plaintiff's "condition did not change in 2012[]" (AR 35), and undermines the reasoning provided for rejecting the opinions of Dr. Brown and Chen.  It also potentially implicates the ALJ's consideration of the other medical opinions offered by FCTP care providers.  The ALJ should, as such, reconsider the evidence from Dr. Brown and Chen on remand.

B.      Kay Crampton, ARNP

Kay Crampton, ARNP, served as a treating provider for plaintiff at FCTP beginning in January 2010.  (AR 1349.)  In a February 2012 letter, Crampton opined that the symptoms from plaintiff's depression and post-traumatic stress disorder (PTSD) were marked and chronic, and that it would be difficult for her to sustain full or part-time employment.  (*Id*.)  Crampton stated plaintiff has anxiety and hyperarousal symptoms that interfere with her ability to interact with appropriate behavior in interpersonal situations, that she avoids social situations and is frequently reluctant to leave her house, frequently has suicidal ideation and has been in physical altercations with others, has been compliant with treatment and consistently takes her prescribed medications.  (*Id*.)

The ALJ gave little weight to Crampton's opinion, finding it inconsistent with her own treatment notes and conclusory.  (AR 40 (citing AR 965-1178).)  The Commissioner states that, while Crampton is referenced in several treatment notes as the individual managing plaintiff's

REPORT AND RECOMMENDATION
PAGE - 9

1   medications on a monthly basis (AR 1124, 1135, 1141, 1176), the record does not contain

2   treatment notes signed by this provider.  The Commissioner argues that, in any event, treatment

3   records from other providers and from plaintiff's dialectical behavior treatment (DBT) sessions

4   do not reflect disabling symptoms.  The Commissioner specifically points to a June 2011 letter

5   written to plaintiff by her counselor, Elana Rosencrantz, MA, stating it was "wonderful to see

6   [her] mostly pain free, clear thinking, and able to connect in a completely different way."  (AR

7   1075.)  The ALJ also considered the fact that plaintiff had completed and was pleased with her

8   progress in DBT therapy classes and was even teaching her own DBT class.  (AR 34.)  The

9   Commissioner further maintains the ALJ appropriately rejected the opinion from Crampton as

10  conclusory in nature.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical

11  source presents relevant evidence to support an opinion, particularly medical signs and

12  laboratory findings, the more weight we will give that opinion. The better an explanation a

13  source provides for an opinion, the more weight we will give that opinion.")

14          It is not clear what evidence the ALJ was referring to in finding inconsistency between

15  the opinion of Crampton and "her own treatment notes[.]"  (AR 40.)  In addition to the

16  Commissioner's concession as to an absence of treatment notes signed by this provider, plaintiff

17  accurately observes that a portion of the notes cited to by the ALJ came from an entirely

18  different medical clinic. (*See* AR 1118-78.)   The ALJ may have, as suggested by the

19  Commissioner, found inconsistency between the opinion of Crampton and plaintiff's treatment

20  records as a whole.  The Court, however, finds it unnecessary to reach such an inference given its

21  conclusion that this matter should be remanded for other reasons.  On remand, the ALJ should

22  reconsider the evidence from Crampton and, if again finding the opinions of this provider

23  inconsistent with the record, specify the basis for the finding of inconsistency and the records

1    relied upon in reaching that determination.

2    C.    Elana Rosencrantz, MA

3          In an undated letter, Rosencrantz described plaintiff as suffering from chronic PTSD,

4    with secondary anxiety and depression and further complicated by various physical impairments,

5    and observed that she "can experience uncontrollable anger which has gotten her into legal and

6    interpersonal trouble." (AR 845.) Both in that letter and in a September 2010 DSHS evaluation,

7    Rosencrantz assessed plaintiff as markedly and severely limited in various cognitive and social

8    abilities. (AR 845, 1005-08.) She opined that plaintiff's "current impairment prevents her from

9    performing work related activities on a sustained basis[]" and deemed her "disabled from

10   substantial gainful activity at this time." (AR 845.)

11         The ALJ gave no weight to Rosencrantz's opinion. He found Rosencrantz relied heavily

12   on plaintiff's unreliable statements, and her opinion not consistent with plaintiff's "ability to

13   consistently access care or her own treatment notes indicating that the claimant has improved."

14   (AR 39 (citing AR 965-1117).) The ALJ had earlier described those treatment notes, including

15   the June 2011 letter from Rosencrantz stating it had been "wonderful" to see plaintiff "mostly

16   pain free, clear thinking, and able to connect in a completely different way." (AR 34-35, 1075.)

17         Considered in isolation, plaintiff fails to demonstrate error in relation to Rosencrantz.

18   For example, the ALJ's identification of inconsistency between Rosencrantz's opinions and her

19   observation of improvement served as a germane reason for rejecting this opinion evidence.

20   However, because the Court finds further consideration of the FCTP records necessary, the ALJ

21   should reconsider the evidence from Rosencrantz as may be appropriate on remand.

22   D.    Grin Geiss Trusz, Psy.D. Student, and Dr. Sierra Swing

23         Grin Trusz, a student studying to be a doctor of psychology, and supervising psychologist

REPORT AND RECOMMENDATION
PAGE - 11

1    Dr. Sierra Swing wrote a letter regarding plaintiff in October 2011.  (AR 966-67.)  The letter

2    stated that, due to her various physical symptoms and hyper vigilance related to PTSD, plaintiff

3    is "often unable to leave the house; however with great effort and dedication she has consistently

4    attended weekly therapy since April 2010."  (AR 966.)  Trusz and Dr. Swing opined that

5    plaintiff's depression and extreme fatigue from insomnia caused by PTSD-related nightmares

6    "make it difficult for her to engage in any type of activity, including any work activity, on a

7    consistent basis."  (*Id*.)  They stated her "history of suicidal ideation and self-harm indicate

8    difficulty managing emotions and tolerating any kind of distress[,]" noting her history of

9    physical altercations and stating the severity of her anger and reactivity issues "makes her a

10   danger" to herself and others.  (*Id*.)  They pointed to recent assessments as indicating a current

11   diminished capacity to concentrate, learn, interact socially, and adapt to new environments and

12   situations.  (*Id*.)  Trusz and Dr. Swing opined plaintiff was "currently unable to be gainfully

13   employed[,]" and would likely become increasingly functionally impaired over time without

14   further intensive treatment.  (AR 966-67.)  They added:  "If she were able to continue intensive

15   medical and mental health treatment that resolved her symptoms of PTSD, depression,

16   fibromyalgia and other medical complications, she may be able to work in an environment with

17   limited public interaction that allowed flexible scheduling for . . . appointments, as well as

18   provided the ability to work from home."  (*Id*.)

19       The ALJ gave some minimal weight to the opinions of Trusz and Dr. Swing.  (AR 38.)

20   He, in particular, gave little weight to their opinion that plaintiff was not capable of sustaining

21   work because it was conclusory and on an issue reserved to the Commissioner, while giving

22   some weight to their opinion that she would be capable of working in an environment with

23   limited public interaction as supported by the record as a whole.  (*Id*.)

As the Commissioner observes, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.  An ALJ may also appropriately find an opinion to infringe on a determination reserved for the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also* SSR 96-5p.

As with the evidence from Rosenkrantz, the ALJ's assessment of the evidence from Trusz and Dr. Swing would withstand scrutiny if considered in isolation.  However, because the Court finds further consideration of the evidence from FCTP warranted, the ALJ should reconsider the opinions of these medical sources as may be appropriate on remand.

Step Two

Plaintiff avers error in the ALJ's failure to find or even consider personality disorder as a severe impairment.  Examining psychiatrist Dr. Mark Koenen, in June 2011, diagnosed plaintiff with personality disorder otherwise specified with cluster B traits, rule out borderline personality disorder.  (AR 917.)  Plaintiff argues the ALJ's failure to consider and account for this impairment resulted in error at step two and beyond.

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)

REPORT AND RECOMMENDATION
PAGE - 13

1   (quoting SSR 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of

2   groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider

3   the "combined effect" of an individual's impairments in considering severity.  *Id.*

4       A diagnosis alone is not sufficient to establish a severe impairment.  Instead, a claimant

5   must show that her medically determinable impairments are severe.  20 C.F.R. §§ 404.1512(c),

6   416.912(c).  Moreover, the failure to list an impairment as severe at step two may be deemed

7   harmless where associated limitations are considered at step four.  *Lewis v. Astrue*, 498 F.3d 909,

8   911 (9th Cir. 2007).

9       The ALJ here stated the impairments deemed severe at step two had been diagnosed by

10  acceptable medical sources and were supported by appropriate clinical findings.  (AR 29.)  The

11  ALJ considered the evaluation by Dr. Koenen, stating:  "Continuing the trend of improvement

12  and minimal functional limitation, the claimant had an independent medical examination with

13  [Dr. Koenen in June 2011].  Her thought processes were well organized.  She was cooperative

14  with normal speech, and she had a full range affect.  She could recall 3/3 objects at five

15  minutes."  (AR 35 (citing AR 913-18).)  The ALJ further clarified that he considered the entire

16  medical record and all of plaintiff's symptoms in assessing her RFC.  (AR 31.)

17      While Dr. Koenen did diagnose personality disorder otherwise specified with cluster B

18  traits,[2] he did not assess any limitations in plaintiff's functioning.  He, at most, assessed a Global

19

20  _____

    [2] The "rule-out" personality disorder diagnoses from counselors Chen and Rosencrantz (AR
21  1261, 1277) do not suffice to establish a severe impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002,
    1005-06 (9th Cir. 2005) (noting SSR 96-6p "provides that a medical opinion offered in support of an
    impairment must include 'symptoms [and a] *diagnosis.*'") (emphasis in original), and *Carrasco v. Astrue*,
22  No. ED CV 10-0043 JCG, 2011 U.S. Dist. LEXIS 12637 at*12-13 (C.D. Cal. Feb. 8, 2011) ("A 'rule-out'
    diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is
23  evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it
    out.") (cited cases omitted).  *See also* SSR 06-3p ("Information from these 'other sources' cannot

REPORT AND RECOMMENDATION
PAGE - 14

1    Assessment of Functioning (GAF) score of 60, reflecting moderate symptoms or moderate

2    difficulty in social, occupational, or school functioning, Diagnostic and Statistical Manual of

3    Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR), and coming close to an assessment of only

4    mild symptoms or difficulty, "but generally functioning pretty well," *see id*. (GAF of 61-70).

5    The GAF score alone cannot be used to "raise" or "lower" someone's level of function and,

6    because it is not accompanied by a sufficient explanation as to the reasons for the rating and

7    applicable time period, it does not provide a reliable longitudinal picture of the claimant's mental

8    functioning for a disability analysis.   Administrative Message 13066 ("AM-13066").  *See also*

9    DSM-V at 16-17 (5th ed. 2013) (most recent version of DSM does not include a GAF rating for

10   assessment of mental disorders).

11        Moreover, as reflected in the ALJ's description of the evidence, Dr. Koenen's evaluation

12   does not include clinical findings supporting a determination of severity.   (AR 35; *see also* AR

13   914, 916 ("affect was consistent with, at most, mild depression during the evaluation.";

14   cooperative, normal speech, goal directed thought process, denial of suicidal or homicidal

15   ideation, no delusions or paranoid ideation, "'down'" mood, full range of affect, intact memory,

16   fair insight and judgment).)   Nor does the history and symptom reporting contained within the

17   evaluation suffice to demonstrate severity.   20 C.F.R. §§ 404.1508, 416.908 ("A step two severe

18   mental or physical impairment must result from anatomical, physiological, or psychological

19   abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic

20   techniques, and established by medical evidence consisting of signs, symptoms, and laboratory

21   findings, not only by [the claimant's] statement of symptoms[.]")

22   _____

23   establish the existence of a medically determinable impairment. Instead, there must be evidence from an
     'acceptable medical source' for this purpose."); *accord* 20 C.F.R. §§ 404.1513(a), 416.913(a).

REPORT AND RECOMMENDATION
PAGE - 15

1    Finally, plaintiff does not show harm in relation to any subsequent steps of the sequential

2    evaluation.  She does not allege the evidence of record could be construed as showing she met

3    the criteria for a personality disorder listing at step three (*see* Dkt. 12 at 10 and Dkt. 14 at 5), or

4    otherwise persuasively argue that the ALJ failed to consider all of the evidence in rendering his

5    conclusions at steps four and five.  Plaintiff, as such, fails to demonstrate harmless error

6    associated with a personality disorder diagnosis.  *See Molina*, 674 F.3d at 1115 (ALJ's error may

7    be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'";

8    the court looks to "the record as a whole to determine whether the error alters the outcome of the

9    case.") (cited sources omitted).

10    However, because this matter should be remanded for the reasons set forth above, the

11    ALJ should take the opportunity to address the personality disorder diagnosis in the record.  In

12    addition, although plaintiff does not raise the issue, it appears the ALJ should also consider

13    whether plaintiff has severe PTSD.  (*See*, *e.g.*, AR 1292 (Dr. Brown included a PTSD diagnosis

14    in her August 2012 assessment).)

15                                    RFC Assessment

16    Plaintiff argues error in the assessed RFC due to the ALJ's errors in considering the

17    medical opinions of record.  She also points to other aspects of the record, including the fact that

18    she has been subjected to criminal charges for her assaultive and inappropriate behavior and

19    observations from counselors at the Division of Vocational Rehabilitation (DVR) and DSHS

20    who interacted with her and noted deficits.  (*See* AR 264-67, 359, 920.)  Plaintiff additionally

21    takes issue with the ALJ's conclusion that the medical evidence was inconsistent with her

22    allegations of disability, maintaining the ALJ selectively referenced treatment notes describing

23    improvement in her symptoms, while ignoring the larger context of her functioning overall.

REPORT AND RECOMMENDATION
PAGE - 16

1    Plaintiff does not identify any error in the ALJ's consideration of the evidence from DVR

2  or DSHS.  (*See* AR 38-39 (according little weight to the DVR opinion because it did not provide

3  any reasoning or support from the medical record for its conclusion and "may also reflect

4  attitudinal issues of the claimant, of which there appear to be several, notably a lack of

5  motivation and a preference for opiates and marijuana."; according little weight to the DSHS

6  opinion because it was conclusory and unsupported by the objective medical evidence, and

7  noting the September 2009 opinion was "apparently predicated on a brief equivocal notation

8  from a nonmedical provider."))   However, further consideration of the medical evidence from

9  plaintiff's providers at FCTP, and possibly further consideration of impairments at step two, may

10  implicate the ALJ's RFC assessment.  The ALJ should, accordingly, reconsider plaintiff's RFC

11  as needed on remand.

12                                         Vocational Expert

13    Plaintiff avers error in the absence of a vocational expert (VE) at hearing.  She notes that

14  the ALJ made the choice to not call a VE at the time the hearing was scheduled, well before the

15  entire record of evidence was available for review, and construes this as suggesting a

16  predisposition on the part of the ALJ toward finding only limitations that would not require the

17  testimony of a VE.  (*See* AR 205 (Notice of Hearing, dated September 19, 2012, gave no

18  indication that a VE would be called); 20 C.F.R. §§ 404.938 (notice of hearing before ALJ to

19  include information as to whether any other person will appear at hearing).  Plaintiff argues

20  greater limitations are supported by the record and necessitate the consideration of her claim with

21  the assistance of a VE.

22    Plaintiff does not adequately address the issue of what evidence remained outstanding at

23  the time the ALJ issued the notice of the hearing (*see*, *e.g.*, AR 81 (counsel at hearing indicated

REPORT AND RECOMMENDATION
PAGE - 17

1   there was "one request outstanding" at the time of the hearing)), or otherwise clearly establish

2   some improper predisposition on the part of the ALJ.  However, because further consideration of

3   this matter may alter the RFC assessment, the ALJ should consider the need to call a VE on

4   remand.  *See generally Thomas*, 278 F.3d at 960 (when the Medical-Vocational Guidelines do

5   not adequately account for all of a claimant's abilities and limitations, the ALJ must consult a

6   VE; the ALJ thereafter "fulfills his obligation to determine the claimant's occupational base by

7   consulting a [VE] regarding whether a person with claimant's profile could perform substantial

8   gainful work in the economy.") (citing *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000)).

9                                                    <u>Remand</u>

10          The Court has discretion to remand for further proceedings or to award benefits.  *See*

11   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  Before remanding a case for an award of

12   benefits, "three requirements must be met: '(1) the record has been fully developed and further

13   administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide

14   legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;

15   and (3) if the improperly discredited evidence were credited as true, the ALJ would be required

16   to find the claimant disabled on remand.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir.

17   2014) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).  *See also Treichler v.*

18   *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (describing three-step process

19   as asking:  (1) whether ALJ failed to provide legally sufficient reason for rejecting evidence; (2)

20   whether record has been fully developed, there are outstanding issues that must be resolved prior

21   to making a determination, and further proceedings would be useful; and (3) if there are no

22   outstanding issues and further proceedings would not be useful, whether the record, taken as a

23   whole, leaves "'not the slightest uncertainty as to the outcome of the proceedings.'") (quoted

source omitted).[3]

The Court, however, retains "'flexibility'" in determining the proper remedy. *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1020). The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* If the record is "uncertain and ambiguous, the proper approach is to remand the case to the agency[]" for further proceedings. *Treichler*, 775 F.3d at 1105. An award of benefits occurs "only in 'rare circumstances,' 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" *Id.* at 1100 (quoted sources omitted).

This case is not appropriately remanded for an award of benefits. Plaintiff does not, for example, challenge the ALJ's credibility finding, a finding which identified, among other things, evidence of drug seeking behavior, exaggeration of symptoms, inconsistencies in reporting of polysubstance abuse, and multiple positive drug screens. (*See*, *e.g.*, AR 35, 37-38 (in 2011: "She requested narcotic pain medications but was observed to be ambulating without discomfort except for when she was aware she was being observed, a circumstance which does not enhance her credibility."; "In September 2009, the claimant walked out of the ER without signing discharge paper and was significantly irate when her request for narcotics prescription was

---

[3] Recent Ninth Circuit opinions present conflicting authority on the particulars of the credit-as-true rule. *See*, *e.g.*, *Garrison*, 759 F.3d at 1020 n.26, 1021 (stating that the third factor – whether the record requires a finding of disability if the rejected testimony is credited – incorporates the question of whether there are any outstanding issues that must be resolved before a disability determination can be made; rejecting argument that further proceedings would serve the "'useful purpose'" of allowing ALJ to revisit medical opinions and testimony rejected for legally insufficient reasons because "the credit-as-true rule foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis."), and *Treichler*, 775 F.3d at 1105-06 (holding that a court must determine there are no outstanding issues *before* crediting the rejected testimony). *See also Bustamante v. Colvin*, No. 13-15152, 2015 U.S. App. LEXIS 5855 at *6-7 (9th Cir. Apr. 10, 2015) (noting pending *en banc* activity in *Burrell*, 775 F.3d 1133, and *Treichler*, 775 F.3d 1090). However, in this case, whatever framework is applied, the Court finds a remand for further proceedings appropriate.

REPORT AND RECOMMENDATION
PAGE - 19

1   refused. . . .   In July 2012, she was unhappy when her treating provider would not prescribe

2   additional narcotics.") (citing, *inter alia*, AR 641 (2009: "There appeared to be no pain or

3   guarding as she ambulated out of ED."); AR 921; and AR 1305).)  Nor did plaintiff challenge the

4   ALJ's identification of numerous inconsistencies between plaintiff's function reports and the

5   reports completed by her boyfriend, the latter of which indicated plaintiff had far greater

6   capability than she reported.  (AR 37.)  These and other issues raise serious doubts as to whether

7   plaintiff is, in fact, disabled, and compel a remand for further consideration of her claim.

8                                          **CONCLUSION**

9           For the reasons set forth above, this matter should be REMANDED for further

10  administrative proceedings.

11                               **DEADLINE FOR OBJECTIONS**

12          Objections to this Report and Recommendation, if any, should be filed with the Clerk and

13  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

14  Recommendation is signed.  Failure to file objections within the specified time may affect your

15  right to appeal.  Objections should be noted for consideration on the District Judge's motions

16  calendar for the third Friday after they are filed.  Responses to objections may be filed within

17  **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will

18  be ready for consideration by the District Judge on **July 3, 2015**.

19          DATED this 17th day of June, 2015.

20

21  _____

22  Mary Alice Theiler
    United States Magistrate Judge

23

REPORT AND RECOMMENDATION
PAGE - 20